UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No.: 15-cr-00034-GLR |
| v. | ) | |
| | ) | Filed |
| TORU OTODA | ) | |
| | ) | Violation: 15 U.S.C. § 1 (Sherman Act) |
| Defendant. | ) | |
| | ) | |

## PLEA AGREEMENT

The United States of America and Toru Otoda ("defendant") hereby enter into the

following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal

Procedure ("Fed. R. Crim. P."):

## RIGHTS OF DEFENDANT

1.    The defendant understands his rights:

(a)    to be represented by an attorney;

(b)    to be charged by Indictment;

(c)    as a citizen and resident of Japan, to decline to accept

service of the Summons in this case, and to contest the jurisdiction of the United States to

prosecute this case against him in the United States District Court for the District of

Maryland;

(d)    to plead not guilty to any criminal charge brought against him;

(e)    to have a trial by jury, at which he would be presumed not

guilty of the charge and the United States would have to prove every essential element of

the charged offense beyond a reasonable doubt for him to be found guilty;

(f)    to confront and cross-examine witnesses against him and to

1

subpoena witnesses in his defense at trial;

(g)     not to be compelled to incriminate himself;

(h)     to appeal his conviction, if he is found guilty; and

(i)     to appeal the imposition of sentence against him.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.      The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(h) above. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2241 or 2255, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 9 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c). Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct. Consistent with Fed. R. Crim. P. 11(b)(1)(O), the defendant recognizes that if he is not a citizen of the United States pleading guilty may have consequences with respect to his immigration status, including removal from the United States, denial of citizenship, and denial of admission to the United States in the future. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a one-count Information to be filed in the United States District Court for the District of Maryland. The Information will charge the defendant with participating in a combination and conspiracy, with his participation

starting from at least as early as November 2010 and continuing until at least September 2012, to suppress and eliminate competition by allocating customers and routes, rigging bids, and fixing prices for international ocean shipping services for roll-on, roll-off cargo, such as cars and trucks, to and from the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3.     The defendant will plead guilty to the criminal charge described in Paragraph 2 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below. The United States agrees that at the arraignment, it will stipulate to the release of the defendant on his personal recognizance, pursuant to 18 U.S.C. § 3142, pending the sentencing hearing in this case.

## FACTUAL BASIS FOR OFFENSE CHARGED

4.     Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)     For purposes of this Plea Agreement, the "relevant period" is the period beginning on or about November 2010 and ending September 2012. During the relevant period, the defendant was a general manager of the car carrier planning group of Kawasaki Kisen Kaisha, Ltd. ("K-Line"), an entity organized and existing under the laws of Japan and with its principal place of business in Tokyo, Japan. During the relevant period, K-Line was an ocean carrier of roll-on, roll-off cargo and was engaged in routes transporting roll-on, roll-off cargo to and from the United States and elsewhere. Roll-on, roll-off cargo is non-containerized cargo that can be both rolled onto and rolled off of an ocean-going vessel. Examples of such cargo include new and used cars and trucks, as well as construction, mining, and agricultural equipment. The international

ocean shipment of roll-on, roll-off cargo as used herein is defined as deep-sea or trans-ocean transportation and does not include short-sea or coastal water freight transportation between the contiguous and non-contiguous states and territories of the United States. During the relevant period, K-Line's sales for international ocean shipping services for roll-on, roll-off cargo exported from the United States that were affected by the conspiracy totaled at least $100 million.

(b)     During the relevant period, the defendant participated in a conspiracy among ocean carriers of roll-on, roll-off cargo, the primary purpose of which was to suppress and eliminate competition by allocating customers and routes, rigging bids, and fixing prices for international ocean shipping services for roll-on, roll-off cargo, such as cars and trucks, to and from the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  In furtherance of the conspiracy, the defendant engaged in discussions and attended meetings with representatives of other ocean carriers of roll-on, roll-off cargo.  During these discussions and meetings, agreements were reached to allocate certain customers and routes, rig certain bids, and to fix, stabilize, and maintain the prices for certain international ocean shipping services for roll-on, roll-off cargo to and from the United States and elsewhere.  Affected customers included certain U.S.–based manufacturers of cars and trucks.

(c)     During the relevant period, roll-on, roll-off cargo shipped by one or more of the conspirator firms, as well as payments for international ocean shipping services of such cargo, traveled in interstate and foreign commerce.  The business activities of K-Line and its co-conspirators in connection with the international ocean shipping services

4

for roll-on, roll-off cargo to and from the United States were within the flow of, and substantially affected, interstate and foreign trade and commerce.

(d)     Acts in furtherance of this conspiracy were carried out within the District of Maryland, Baltimore Division. The Port of Baltimore is one of the largest ports in the United States for the import and export of new automobiles. During the relevant period, shipments of roll-on, roll-off cargo that were affected by the conspiracy were exported from the Port of Baltimore.

## ELEMENTS OF THE OFFENSE

5.     The elements of the charged offense are that:

(a)     the conspiracy described in the Information existed at or about the time alleged;

(b)     the defendant knowingly became a member of the conspiracy; and

(c)     the conspiracy described in the Information either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

## POSSIBLE MAXIMUM SENTENCE

6.     The defendant understands that the statutory maximum penalty which may be imposed against him upon conviction for a violation of Section One of the Sherman Antitrust Act is:

(a)     a term of imprisonment for ten (10) years (15 U.S.C. § 1);

(b)     a fine in an amount equal to the greatest of (1) $1 million, (2) twice the gross pecuniary gain the conspirators derived from the crime, or (3) twice the gross pecuniary loss caused to the victims of the crime by the conspirators (15 U.S.C. § 1; 18 U.S.C. § 3571(b) and (d)); and

(c)     a term of supervised release of three (3) years following any term of imprisonment. If the defendant violates any condition of supervised release, the defendant could be required to serve up to two (2) years in prison (18 U.S.C. § 3559(a)(3); 18 U.S.C. § 3583(b)(2) and (e)(3); and United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") § 5D1.2(a)(2)).

7.      In addition, the defendant understands that:

(a)     pursuant to U.S.S.G. § 5E1.1 or 18 U.S.C. §§ 3663(a)(3) or 3583(d), the Court may order him to pay restitution to the victims of the offense; and

(b)     pursuant to 18 U.S.C. § 3013(a)(2)(A), the Court is required to order the defendant to pay a $100.00 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

8.      The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed. The parties agree there is no *ex post facto* issue under the November 2014 Guidelines Manual. The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be

reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

9.      The United States and the defendant agree to the following Guidelines calculations:

(a)     The November 1, 2014, edition of the Guidelines applies.

(b)     The controlling Guideline applicable to the sole count charged is U.S.S.G. § 2R1.1.

(c)     The Guidelines fine range is one to five percent of the volume of commerce attributable to the defendant pursuant to U.S.S.G. § 2R1.1(b)(2) and (c)(1).

(d)     Pursuant to the Guidelines § 2R1.1(a), the base offense level is 12.

(e)     The offense to which the defendant is pleading guilty involved participation in an agreement to submit non-competitive bids, within the meaning of U.S.S.G. § 2R1.1(b)(1), which increases the offense level by 1.

(f)     The volume of commerce attributable to the defendant within the meaning of U.S.S.G. § 2R1.1(b)(2) is more than $100,000,000, which increases the offense level by 8.

(g)     The defendant was a manager or supervisor of criminal activity that involved five or more participants within the meaning of U.S.S.G. § 3B1.1(b), which increases the offense level by 3.

(h)     The resulting offense level before any reduction for acceptance of responsibility is 24.

(i)     Based on an offense level of 24 and a Criminal History Category I, the Guidelines imprisonment range is 51 to 63 months.

10.     The United States does not oppose a two-level reduction in the defendant's adjusted offense level, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. The United States agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level reduction in recognition of the defendant's timely notification of his intention to plead guilty. If the Court grants a three-level reduction for acceptance of responsibility, the defendant's total offense level will be 21. Based on a total offense level of 21 and a Criminal History Category I, the Guidelines imprisonment range is 37 to 46 months.

11.     The defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history or criminal history category could alter his offense level, if he is a career offender or if the instant offense was part of a pattern of criminal conduct from which he derived a substantial portion of his income.

12.     The United States and the defendant agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the Guidelines justifying a departure pursuant to U.S.S.G. § 5K2.0.

13.     The United States and the defendant agree that with respect to the calculation of the advisory Guidelines range, no offense characteristics, Sentencing Guidelines factors, potential departures or adjustments as set forth in Chapters 2, 3, 4, or 5 of the Sentencing Guidelines will be raised, argued, or are in dispute that are not set forth in this Plea Agreement.

**SENTENCING AGREEMENT**

14.     Pursuant to Fed. R. Crim. P. 11(c)(1)(C) and subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 18 of this Plea Agreement, the

United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of $20,000, payable in full before the fifteenth (15th) day after the date of judgment; a period of imprisonment of eighteen (18) months; no period of supervised release; and no order of restitution ("the recommended sentence"). The defendant agrees that he will not request that he be allowed to serve any part of his sentence in home detention, intermittent confinement, or community confinement. The United States will not object to the defendant's request that the Court make a recommendation to the Bureau of Prisons that the Bureau of Prisons designate that the defendant be assigned to a Federal Minimum Security Camp (or one such specific Camp as the defendant may request prior to or at the time of sentencing) to serve his sentence of imprisonment and that the defendant be released following the imposition of sentence to allow him to self-surrender to the assigned prison facility on a specified date after his sentencing. The defendant understands that the Court will order him to pay a $100 special assessment pursuant to 18 U.S.C. § 3013(a)(2)(A) in addition to any fine imposed. The parties agree that the recommended sentence set forth in this Plea Agreement is reasonable.

15.     The United States and the defendant agree that the agreed-upon Guidelines calculations, set forth in Paragraphs 9 and 10 above, result in applicable Guidelines fine and imprisonment ranges exceeding the fine and term of imprisonment contained in the recommended sentence set forth in Paragraph 14 above. Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 18 of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. § 5K1.1, for a downward departure from the Guidelines fine and imprisonment ranges in this case and will request that the Court impose the fine and term of imprisonment set out in

Paragraph 14 of this Plea Agreement because of the defendant's substantial assistance in the government's investigation and prosecution of violations of federal antitrust laws involving international ocean shipping services for roll-on, roll-off cargo.

16.     Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 18 of this Plea Agreement, and before sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's cooperation and his commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct.

17.     The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 14 of this Plea Agreement.

(a)     If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 17(b) below, shall be rendered void. Neither party may withdraw from this Plea Agreement, however, based on the type or location of the prison facility to which the defendant is assigned to serve his sentence.

(b)     If the Court does not accept the recommended sentence, the defendant will be free to withdraw his guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)). If the defendant withdraws his plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government will not be admissible against the defendant in any criminal

or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendant agrees that, if he withdraws his guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any Relevant Offense, as defined in Paragraph 19 below, will be tolled for the period between the date of signature of this Plea Agreement and the date the defendant withdrew his guilty plea or for a period of sixty (60) days after the date of signature of this Plea Agreement, whichever period is greater. For a period of three (3) consecutive days following such a withdrawal of the guilty plea under this subparagraph, the United States will take no action, based upon either a Relevant Offense or any actual or alleged violation of this Plea Agreement, to revoke the defendant's release on his personal recognizance, to subject the defendant to service of process, arrest, or detention, or to prevent the defendant from departing the United States.

## DEFENDANT'S COOPERATION

18.     The defendant will cooperate fully and truthfully with the United States in the prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws involving ocean shipping services for roll-on, roll-off cargo, any federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding"). Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding. The full, truthful, and continuing cooperation of the defendant will include, but not be limited to:

11

(a)     producing all documents, including claimed personal documents, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of the defendant, that are requested by attorneys and agents of the United States in connection with any Federal Proceeding;

(b)     making himself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with any Federal Proceeding;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503 *et seq.*), or conspiracy to commit such offenses;

(d)     otherwise voluntarily providing the United States with any material or information not requested in (a)-(c) of this paragraph, and not protected under the attorney-client privilege or work-product doctrine, that he may have that is related to any Federal Proceeding; and

(e)     when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503 *et seq.*).

## GOVERNMENT'S AGREEMENT

19.     Subject to the full, truthful, and continuing cooperation of the

defendant, as defined in Paragraph 18 of this Plea Agreement, and upon the Court's acceptance

of the guilty plea called for by this Plea Agreement and the imposition of the recommended

sentence, the United States agrees that it will not bring further criminal charges against the

defendant for any act or offense committed before the date of signature of this Plea Agreement

that was undertaken in furtherance of an antitrust conspiracy involving international ocean

shipping services for roll-on, roll-off cargo ("Relevant Offense"). The non-prosecution terms of

this paragraph do not apply to (a) any acts of perjury or subornation of perjury (18 U.S.C. §§

1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of

justice (18 U.S.C. § 1503 *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit

such offenses; (b) civil matters of any kind; (c) any violation of the federal tax or securities laws

or conspiracy to commit such offenses; or (d) any crime of violence.

20.     The United States agrees that when the defendant travels to the United States for

interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for

meetings with counsel in preparation therefor, the United States will take no action, based upon

any Relevant Offense, to subject the defendant to arrest, detention, or service of process, or to

prevent the defendant from departing the United States. This paragraph does not apply to the

defendant's commission of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a

false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C.

§ 1503 *et seq.*), contempt (18 U.S.C. §§ 401 - 402), or conspiracy to commit such offenses.

21.     (a)     Subject to the full, truthful, and continuing cooperation of the defendant,

as defined in Paragraph 18 of this Plea Agreement, and upon the Court's acceptance of

the defendant's guilty plea and imposition of sentence in this case, the United States

agrees not to seek to remove the defendant from the United States under Sections 238 and

240 of the Immigration and Nationality Act, 8 U.S.C. §§ 1228 and 1229a, based upon the

defendant's guilty plea and conviction in this case, should the defendant apply for or

obtain admission to the United States as a nonimmigrant (hereinafter referred to as the

"agreement not to seek to remove the defendant").  The agreement not to seek to remove

the defendant is the equivalent of an agreement not to exclude the defendant from

admission to the United States as a nonimmigrant or to deport the defendant from the

United States.  (Immigration and Nationality Act, § 240(e)(2), 8 U.S.C. § 1229a(e)(2)).

      (b)     The Antitrust Division of the United States Department of Justice has

consulted with United States Immigration and Customs Enforcement ("ICE") on behalf

of the United States Department of Homeland Security ("DHS").  ICE, on behalf of DHS

and in consultation with the United States Department of State, has agreed to the

inclusion in this Plea Agreement of this agreement not to seek to remove the defendant,

pursuant to Attachment A to this Plea Agreement. The Secretary of DHS has delegated

to ICE the authority to enter this agreement on behalf of DHS.

      (c)     So that the defendant will be able to obtain any nonimmigrant

visa that he may need to travel to the United States, DHS and the Visa Office, United

States Department of State, have concurred in the granting of a nonimmigrant waiver of

the defendant's inadmissibility, pursuant to Attachment A. This waiver will remain in

effect so long as this agreement not to seek to remove the defendant remains in effect.

While the waiver remains in effect, the Department of State will waive any denial, made

on the basis of the defendant's guilty plea and conviction in this case, of the defendant's

application for a nonimmigrant visa, and DHS will waive any denial, made on the basis of his guilty plea and conviction in this case, of his application for admission as a nonimmigrant. This nonimmigrant waiver only applies to applications for entry as a nonimmigrant. DHS does not agree to waive any grounds of removability on an application for an immigrant visa.

(d)     This agreement not to seek to remove the defendant will remain in effect so long as the defendant:

(i)     acts and has acted consistently with his cooperation obligations under this Plea Agreement;

(ii)     is not convicted of any felony under the laws of the United States or any state, other than the conviction resulting from the defendant's guilty plea under this Plea Agreement or any conviction under the laws of any state resulting from conduct constituting an offense subject to this Plea Agreement; and

(iii)     does not engage in any other conduct that would warrant his removal from the United States under the Immigration and Nationality Act. The defendant understands that should the Antitrust Division become aware that the defendant has violated any of these conditions, the Antitrust Division will notify DHS. DHS will then determine, in consultation with the Antitrust Division, whether to rescind this agreement not to seek to remove the defendant.

(e)     The defendant agrees to notify the Assistant Attorney General of the Antitrust Division should the defendant be convicted of any other felony under the laws of the United States or of any state.

(f)     Should the United States rescind this agreement not to seek to

15

remove the defendant because of the defendant's violation of a condition of this Plea Agreement, the defendant irrevocably waives his right to contest his removal from the United States under the Immigration and Nationality Act on the basis of his guilty plea and conviction in this case, but retains his right to notice of removal proceedings.

22.     The defendant understands that he may be subject to suspension or debarment action by state or federal agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls what action, if any, other agencies may take.  However, the Antitrust Division agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation of the defendant as a matter for that agency to consider before determining what action, if any, to take.  The defendant nevertheless affirms that he wants to plead guilty regardless of any suspension or debarment consequences of his plea.

23.     If the defendant meets all of the terms and conditions set forth in this Plea Agreement, the Antitrust Division agrees that it will advise the Office of Enforcement Operations ("OEO") in the Criminal Division of the Department of Justice that it has no objection to the defendant's application to transfer to Japan to serve his sentence pursuant to the international prisoner transfer program.  The defendant acknowledges and understands, however, that, if he is eligible and applies for transfer, the transfer decision rests in the sole discretion of OEO and that the position of the Antitrust Division is neither binding nor determinative of the positions of other federal agencies or on the final transfer decision of OEO.  The defendant further understands that in addition to OEO, federal law and the underlying transfer treaties require that the foreign government must also approve the transfer.

## REPRESENTATION BY COUNSEL

24.     The defendant has reviewed all legal and factual aspects of this case
with his attorney and is fully satisfied with his attorney's legal representation.  The defendant has
thoroughly reviewed this Plea Agreement with his attorney and has received satisfactory
explanations from his attorney concerning each paragraph of this Plea Agreement and
alternatives available to the defendant other than entering into this Plea Agreement.  After
conferring with his attorney and considering all available alternatives, the defendant has made a
knowing and voluntary decision to enter into this Plea Agreement.

## VOLUNTARY PLEA

25.     The defendant's decision to enter into this Plea Agreement and
to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats,
assurances, promises, or representations other than the representations contained in this Plea
Agreement and Attachment A.  The United States has made no promises or representations to the
defendant as to whether the Court will accept or reject the recommendations contained within
this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

26.     The defendant agrees that, should the United States determine in good
faith, during the period that any Federal Proceeding is pending, that the defendant has failed to
provide full, truthful, and continuing cooperation, as defined in Paragraph 18 of this Plea
Agreement, or has otherwise violated any provision of this Plea Agreement, the United States
will notify counsel for the defendant in writing by personal or overnight delivery, email, or
facsimile transmission and may also notify counsel by telephone of its intention to void any of its
obligations under this Plea Agreement (except its obligations under this paragraph), and the

defendant will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant for any Relevant Offense, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

27.     The defendant understands and agrees that in any further prosecution of him resulting from the release of the United States from its obligations under this Plea Agreement because of the defendant's violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by him to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against him.  In addition, the defendant unconditionally waives his right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

28.     The defendant agrees to and adopts as his own the factual statement contained in Paragraph 4 above.  In the event that the defendant breaches this Plea Agreement, the defendant agrees that this Plea Agreement, including the factual statement contained in Paragraph 4 above, provides a sufficient basis for any possible future extradition request that may be made for his return to the United States to face charges either in the Information referenced in Paragraph 2 of this Plea Agreement or in any related indictment.  The defendant further agrees not to oppose or

contest any request for extradition by the United States to face charges either in the Information referenced in Paragraph 2 of this Plea Agreement or in any related indictment.

## ENTIRETY OF AGREEMENT

29.     This Plea Agreement and Attachment A constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

30.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

31.     A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

DATED: _March 26, 2015_    Respectfully submitted,

BY: _____    BY: _____
    TORU OTODA               Carsten M. Reichel
    Defendant                Jon B. Jacobs
                                Craig Y. Lee
                                Richard A. Hellings, Jr.
                                Emma M. Burnham

_____
Bradley S. Lui                Attorneys
Counsel for Toru Otoda      U.S. Department of Justice
                                Antitrust Division
                                450 5th Street, N.W.
                                Washington, D.C. 20530
                                Tel: (202) 305-0893
                                Carsten.reichel@usdoj.gov

# Attachment A

*Office of the Principal Legal Advisor*

U.S. Department of Homeland Security
500 12th Street, SW
Mailstop - 5900
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

November 18, 2014

The Honorable Brent Snyder
Assistant Attorney General
Antitrust Division
U.S. Department of Justice
Washington, D.C.  20530

Re:  Waiver of Inadmissibility for Toru Otoda

Dear Mr. Snyder:

Marvin Price of the Department of Justice (DOJ), Antitrust Division, has asked U.S. Immigration
and Customs Enforcement (ICE), on behalf of the Department of Homeland Security (DHS), to
agree to the inclusion of a provision in a plea agreement with Toru Otoda that would relieve him
of adverse immigration consequences of his impending conviction for the criminal violation of
the Sherman Antitrust Law, 15 U.S.C. § 1.  The requested provision would constitute a waiver of
any grounds of inadmissibility for nonimmigrants under 8 U.S.C. § 1182(d)(3)(A) based solely
on this plea agreement and conviction.  The Secretary of Homeland Security has delegated to the
Assistant Secretary of ICE the authority to give this concurrence on behalf of DHS.  The
Assistant Secretary has further delegated this authority to the Principal Legal Advisor.

Toru Otoda is a citizen and national of Japan, residing in Japan.  From November 2010 to
September 2012, Toru Otoda was a general manager in the car carrier division of Kawasaki
Kisen Kaisha, Ltd. ("K-Line"), a Japanese company headquartered in Tokyo, Japan.  According
to Mr. Price, DOJ considers Toru Otoda's cooperation to be critical to obtaining the evidence to
induce other corporate and individual subjects to plead guilty and cooperate in the investigation
into the conspiracy to suppress and eliminate competition for certain international ocean shipping
services of roll-on, roll-off cargo.  Furthermore, DOJ believes that Toru Otoda poses no
continuing threat to United States commerce, and no threat to take part in any future criminal
activity.  Mr. Price has advised ICE that Toru Otoda is not readily subject to the jurisdiction of
the United States, and his continued ability to travel to the United States as a nonimmigrant is a
critical factor in securing his cooperation.  The Directorate for Visa Services, Department of
State (DOS), has concurred in the requested waiver.  ICE has also received concurrence from
U.S. Customs and Border Protection (CBP), Admissibility Review Office.  Based on the
Memorandum of Understanding between the Antitrust Division, United States Department of
Justice and the Immigration and Naturalization Service, United States Department of Justice, Mr.
Price's memorandum, and the CBP and DOS concurrences, I agree to Mr. Price's request on

Page 2

behalf of DHS. You may file this letter, or a copy, with the appropriate district court, as provided in 28 C.F.R. § 0.197.

Please note that when Toru Otoda comes to the United States to enter his guilty plea, and again when he comes to serve his sentence, he does not qualify for admission as a nonimmigrant visitor for "business" on those particular trips. 8 U.S.C. § 1101(a)(15)(B). Therefore, Toru Otoda will require parole on those occasions. ICE will gladly work with DOJ to authorize Toru Otoda's parole into the United States for the trips related to this criminal proceeding. Ms. Stephanie Lytle at the Law Enforcement Parole Unit is the ICE point of contact for such public benefit parole requests. DOJ may contact Ms. Lytle at (703) 877-3236 to make parole arrangements for Toru Otoda. For future trips, Toru Otoda will be able to seek admission as a nonimmigrant with the 8 U.S.C. § 1182(d)(3) waiver granted as part of his plea agreement.

Sincerely,

Riah Ramlogan
Deputy Principal Legal Advisor